Good morning and may it please the court, Ezekiel Cortez on behalf of appellant John Hickey. If I may reserve five minutes for rebuttal. This case, your honors, is a case facially riddled with what appear to be irregularities. Irregularities by the court, irregularities by defense counsel, initial defense counsel, and these irregularities are a theme and we will heard of the Midas touch. I believe this case is in reverse, Midas in reverse. We begin first with a court continuing the case for years. I haven't seen, at least in the southern district where I grew up as a lawyer, as a federal defender, I haven't seen a judge take a case like this, a white-collar fraud case, and just continue it, and continue it for a long time. And the point for oral argument, as opposed to repeating my briefs to the court, is, oh, cut to the chase. Most of the errors in this case that we claim are errors, most of the procedural errors could have been prevented so easily. Take the first one, the matter of whether a court can, like the queen of hearts in Alice in Wonderland, let's have the sentence first, verdict afterwards. How can a district court, four years later, make excludable time? There is a thick irony in that action. This case is an allegation of fraud by a man and other people who lost track of millions of dollars. The irony in the first issue regarding retroactive finding of excludability is that district court Judge Chesney found 23 days went missing from the speedy trial clock. So what did the judge do when these 23 days went missing four years later? She suggested to the magistrate judge to find them to see whether they could fix the books, if you will. The analogy applies to the charges in this case, so that we maintain that a court dealing with an issue of speedy trial excludable time, which is very, very important and has been found to be highly important by this Court repeatedly. You cannot just go back four years later and clean it up. Although this has nothing to do with this issue, the clear error, the plain error standard by this Court, Rule 54, says, in essence, that a plain error issue will be considered by this Court if, among other things, the appearance of the judicial process functioning is threatened. Well, imagine yourselves as an outside observer of that first issue. In this day and age, when we've seen the end-run cooking of the books, we've seen a made-up cooking of the books, and everybody changing the record. This, in our opinion, and we maintain, is not very judicial. To go back four years later and divine what happened. As you can tell from the record, there was not a finding made contemporaneously with that. There wasn't a record where the magistrate judge could go back and trigger a memory. This thing was just divine out of whole cloth, and there you have the first issue. And it's along the line of the theme in this case. What's the second issue? Well, the second issue is running throughout this case. That second issue is you have appointed counsel, local appointed counsel, under the CJA. Trial counsel was appointed because Mr. Hickey had no money. He was found to be indigent. The district court found Hickey to be indigent. So you have an appointed counsel who, years later, after he manages to basically irritate everyone, he manages to go to court six months shy of trial and basically say, can I get out, please? Judge, also, why do you want to get out with such lengthy history in this case? I have alcohol problems, and I want to check myself into rehab. That is a very troubling concept in a wide-collar, complex case that ran years before the district court with an interlocutory appeal back and forth. Incidentally, the interlocutory appeal, you know how easy that could have been fixed and removed as an issue from this case? You know how easy it would have been. Judge Chesney, look at the motion from trial counsel. The first notice of appeal was the denial of a motion to dismiss because the indictment lacked probable cause. Give me a break. The indictment itself is facial probable cause. So at the district court level, the trial court could have easily taken that motion so that I wouldn't be up here talking to you and say, you know what, counsel, this is frivolous. Give me a break. I'm going to deny your motion. I'm going to make a finding of frivolity in your motion, and take me up if you want. If she had done that, this Court's law says, the district court would have kept jurisdiction. Okay? And whether it was an interlocutory issue in the first place would have been an issue. But notice the theme again, easily preventable procedural problem. What's the next procedural problem? Well, when Attorney David Cohen seeks to be relieved because he suffers from alcohol problems and God knows what else, one of the most prominent, most influential, most well-respected men in this city agrees to take the case. He is now the U.S. attorney in this fine city, a very well-respected man. His legion of accomplishments are exemplary. He comes into the case under very difficult circumstances. You have an individual who has been found indigent, who under CJA, as you well know, would then have to reimburse appointed counsel for now having hired a lawyer. You saw the documents under seal. Well, Attorney Ruzzinello was going to get paid by the father-in-law. Well, the father-in-law died, another irregularity. No one could control that. Only God could prevent that one. So the father-in-law dies. Now Mr. Ruzzinello is stuck with a case and no money. There's another irregularity along those lines. Mr. Ruzzinello had lost contact with his own client. There was no cooperation provided to him by Mr. Hickey. There's reasons why on the record. But look at that irregularity. Now you have a speedy trial issue that is already pregnant in the case. You have an appointed lawyer found to be properly appointed because the defendant was indigent. Then he removes himself because of alcoholism. Incidentally, Judge Alsup made a finding on the record, a specific finding, that Attorney Cohen would be incompetent and inefficient for at least six months, if not more. Judge Alsup did not do the obvious and what they had done before. How about a retroactive finding of incompetence? Just like the court did with the speedy trial issue. Let's go back four years and see if we can cook our books. Or let's go back four years and see whether Attorney Cohen had been incompetent the whole time. That wasn't done. No one thought about that. Ruzzinello picks up a case that is infected at best. A district court judge already upset a trial counsel and the defendant, and look at his actions. Look at the district court's actions. They're all over the record. Number one, if you wait two years because this Court is considering the interlocutory appeal, why can't you wait five more months? When this Court agrees and grants a motion to withdraw the judgment, to withdraw the judgment, a district court knows exactly the meaning of that. This Court wishes to keep jurisdiction. Nevertheless, Judge Alsup decided on his own to proceed anyway with the case, because he found, since this Court's initial opinion was the first one. Let me ask you a question here. The ultimate conclusion of this Court was that it was frivolous. Absolutely. Okay. Doesn't that mean that there was jurisdiction all along in the district court? Absolutely not, because of what this Court itself has ruled in that very factual scenario. This Court has ruled that the eventual vindication, if you will, of the government in an issue does not make a difference. It's a jurisdictional issue. So that the case was before this Court properly, whether successful or not, while this case this Court was ruling upon it. Once you recall the mandate, moreover, you're inviting a petition for rehearing en banc or rehearing. The issue is what we're doing. Okay. You answered the first question. Second question, the trial occurred not during the pendency of the first appeal. Correct. But from an appeal from the fact that Judge Alsop decided that the appeal was frivolous. Correct. Okay. You just disagree with him on the merits, not the fact that he had a right to do that, or you disagree that he had a right to do it? The procedure, he didn't have the right to do so. Okay. That determination was in this Court's hand. And you recall the mandate. So what if maybe half of you, you know you disagree from time to time with each other. What if half of you decided, wait a minute, I see an issue here? I want to, you know, I want briefing. I want to hear it. What if that happened? And what if one of you and a majority of you basically found, you know what, there are two people. I think you have a good point on that. But the fact is that it didn't happen. I mean, there were like 20-some continuances asked for on this filing the petition for re-hearing, which is your client, not the Court. Okay. So my question is this. When a trial takes place, the mandate has issued, correct? Correct. Okay. So why isn't it almost like, and because his appeal is on the double jeopardy question, which is really him not, you know, you don't want him to go to trial when he has a double jeopardy claim pending. Correct. But why isn't it almost, his appeal almost mooted out on this point once the mandate issues? Because then he doesn't need to go to trial under the cloud of a double jeopardy appeal. I understand. Or the double jeopardy. So why doesn't that make common sense? That's what I'm asking. It is common sense. Okay. It's also common sense to realize that there were actions taken by the district court while jurisdiction lay here, which later affected the very evidence that was offered at trial. And the very evidence But the only thing he was up here on was what was the pure legal question of whether there would be double jeopardy in this circumstance, then that doesn't have anything to do with what the district court was doing. But it does, because the district court proceeded not to just take action in aid of the appeal, which is allowed to do, clerical mistake corrections or enforcement of a judgment, which is the law of this land. He did far more than that. He started doing pretrial hearings and determining what evidence would later be admitted at trial. So what does that have to do with the issue if he eventually did go to trial? It might moot out the double jeopardy issue. Okay. And he might even moot out the still pending appeal before this Court on the lack of probable cause with the indictment. But the fact remains that those rulings by the district court were permanent and affected later the evidence allowed at trial. So there's such But the double jeopardy claim doesn't get him any evidentiary relief. It only gets him go or no go. You are correct. The issue And I hear what you're saying, because we all grow up with this view that when it's on appeal, the district court doesn't have jurisdiction. But if you look at that a little closer, although we always repeat that mantra, that is kind of a judge-made rule. And in this case, I'm having some understanding why it makes sense to apply it so strictly. And I believe you just put your finger on an issue that perhaps needs to be clarified. For instance, what is the remedy? If you were to ask me, Mr. Cortez, so what factor, what is the remedy? Assuming that was an error, then what are you asking this Court to do? That's a harder question. And since I posed it to myself like an idiot, now I have to answer it. So what is the remedy? We maintain that when Judge Elzip made pretrial rulings, which would affect the evidence that later was offered at trial, then that very pretrial ruling, when he had no jurisdiction, has affected the trial itself and evidence allowed in. Therefore So what if he went back and he said, I make the same pretrial rulings? I'm sorry? So if you sent it back and he said, I make the same pretrial rulings, therefore the trial stays the same. Aha. But if it was that simple, then you wouldn't have to consider the rest of the error in the middle of trial, such as the jury instructions, such as the expert opinion. And while I'm at it, let me connect it to this issue. Judge Elzip's rulings are part of our appeal. Our issues are all interconnected. One theme is that this trial court may have been biased against Mr. Hickey. Certainly, the image We don't have that claim in front of us, do we? I'm sorry? Do we have that claim in front of us? Yes, you do. Indeed, if you look at our briefs Under which of the claims? Under the interlocutory issue and under the We have a section under the experts testimony and the jury instructions that we specifically devote to the district court's apparent bias against Mr. Hickey. Right. But that's related to those rulings, right? That's correct. Okay. So that Precisely. Did you say you wanted to save five minutes? I did, Your Honor. I'm way out of it. Yes. Now, we could take about two hours on this. We could spend all day on this. There are a lot of issues. Yes. But under our system, as opposed to the English system, I think you'd better save your time. I understand. Thank you. May it please the Court. I'm B.J. Schenker with the Department of Justice. Your Honors, I plan to address just a few of the points raised by my colleague and, of course, answer any questions the Court may have. Well, one issue I think you might try to answer also is the indictment in which they dropped the one of the issues for the fraud issues for four years and whether you can revive that in the fourth indictment. Certainly, Your Honor. I can turn to that first. Well, no, you don't have to do it first. Included among your issues should be that one. Okay. Well, unless the Court objects, I will turn to it first.  Because it's fresh on our minds. The ability to add those charges in the third superseding indictment exists for two reasons. One, first and foremost, the original indictment was never dismissed. And it's commonplace in cases such as this one for multiple indictments to exist against a defendant at the same time. An original indictment is not automatically dismissed by the filing of a superseding indictment. And while the original indictment is still pending, a defendant is considered to be on notice of all the charges that are still pending against him in that indictment. It's possible that the government could have dismissed by its own choice the superseding indictment, in which case the defendant would still be subject to the charges in the original indictment. Secondly, the fact that those two intervening indictments did not contain the securities fraud charges is really irrelevant because they still contain the same nucleus of operative facts, the same core conduct that was issued in the securities fraud conduct. So Mr. Hickey all along knew the charges, the essential facts that he would have to defend against. And that's really the essential inquiry this Court takes when it considers the statute of limitations question. What you have any cases in which you have dropped charges and then years later added them back in? I actually, I looked, Your Honor. I didn't see cases, just as a factual matter, where it simply may be that they didn't come up on appeal. I'm not saying they don't, this situation doesn't exist. I couldn't find cases. It could just as easily be the other way, that you had dropped them and then it was too late to add them back. I've never known the government to subscribe to the position that it could not bring back charges while an original indictment was still impending, or still pending. Are there known cases in which somebody has said you can't bring these back because we went four years without them? I have not seen. I did not see those cases. So it's not something that happens all the time. Well, it's, it's, there aren't any law on the subject. There's no law on the subject, but there's plenty of law on the fact, as I've already mentioned, that an original indictment remains pending until it is affirmatively dismissed. It does not become automatically dismissed. There are plenty of cases. I know of two that you mentioned. Well. And one was the continuation of the identical indictment. And the other was where they made a mistake and tried somebody on the first instead of the second, and they said the second had the same charges as the first. Your indictment, Your Honor, this Court's decision in the Holm case and the Sears-Roboff case. Yeah. I mean, Holm said that if, you know, there's no prejudice from using one rather than the other, although they're both the same, but if there were a difference and there were prejudice, that might be a different matter, they said. Right. But for the initial premise that an original indictment remains pending until it is affirmatively dismissed, that's a well-settled proposition. Where is it well-settled? I asked for a case that says it. This case, this Court actually itself characterized it as well-settled. Well, that's what I'm trying to find. Right. And that's Holm at page 569. Yeah. I know. The Holm said that if it caused prejudice, it might be different, didn't it? It may have said that. Well, it may have said it. It did say it. Okay. But where is the premise in this case? What it said was when you had the same indictment with the same charges, and for whatever reason you picked the wrong indictment, it didn't make any difference because it didn't do any harm. Okay, Your Honor. So what else is there that we have that says it's well-settled, that you can drop charges for several years and then come back? Well, as I've acknowledged, I haven't seen cases with that specific holding. But when you mentioned the prejudice question in Holm, and I would ask what the prejudice was here, given that the defendant all along believed and understood that he was still subject to these same allegations of misrepresentations. Well, if it wasn't only if we assume the original indictment still existed, and you don't produce any law on it. Well, that's not true, Your Honor, because I can't. Can I ask you a different question there? I think you explained as much as you can, which isn't much. But I'm more worried about the absence of jurisdiction in the district court at the time of trial. As I understand it, there was the first appeal, and there was — it went back and forth. We recalled the mandate. And at the period at which the mandate was recalled, Judge Alsop took over the case and said, I'm going to rule on this question of double jeopardy. Now, if I understand the dates correctly, he did not have jurisdiction at that point. The mandate had been recalled, and the case was here. Is that correct? Well, Your Honor, he did not have jurisdiction to decide the issues that were before the circuit in the appeal. He did not have jurisdiction to decide those issues. Defendant appeals. And that appeal was before the circuit at the time the trial takes place. That's right, Your Honor. Well, why doesn't that prevent the trial from taking place? Because the district court is not divested of jurisdiction automatically by a notice of — a defective notice of appeal, a notice of appeal from an unappealable order. Why is it unappealable if you don't have jurisdiction? That seems to be a very appealable order. That's not necessarily an appealable interlocutory order, Your Honor. Well, what do you mean? A judge is proceeding without jurisdiction. I would think that was elementary. You could appeal that. That could be corrected on appeal after — after trial. That's not — that's not the same double jeopardy issue as the court addressed. It's an appeal from an order issued by a judge without jurisdiction. And it can be addressed after — What's that? It could be addressed after conviction. I don't think the Supreme Court — Why could it be addressed with a conviction? He's ruling on double jeopardy, isn't he? No, he's not, Your Honor. He's ruling that he had jurisdiction to proceed on pretrial motions. No, but he's also made a ruling that this is a — the double jeopardy was frivolous. But he made an alternative ruling that even if it wasn't frivolous, he was permitted to proceed — And he's doing all that without having jurisdiction. Well, I would disagree that he doesn't have jurisdiction. But assuming — Well, it's in the cases in the circuit. The mandate's been recalled. Right. But — but — You think he has jurisdiction? He has jurisdiction to proceed to decide pretrial motions and set calendar dates. No, but he's making a ruling on the double jeopardy. But all he did was decide pretrial motions and set calendar dates. No, but he also decided the double jeopardy motion was frivolous. Right. And that he had no jurisdiction to do that. That — this Court need not decide whether he had jurisdiction to — What's that? This Court need not decide whether he had jurisdiction to revisit that question. Oh, why not? Because he never lost jurisdiction simply to decide pretrial motions and set calendar dates. No, but he made another ruling which was appealed and was up here. Right. And he had jurisdiction to — Well, why — why isn't that totally unjustified? He had jurisdiction to make — He did not have jurisdiction to decide the double jeopardy question. He may not have. He may have. May not. He did not. Okay. But he had — You'll concede that, will you not? He did not have jurisdiction to decide double jeopardy. I will not concede that he did not have — Why will you not? Because there's no case holding that he had no jurisdiction to revisit the frivolity question after this Court issued its — But the mandate had been recalled. That's why he had no jurisdiction. Right. But the law is unsettled as to what occurs when this Court has issued its mandate and then recalled its mandate. Well, that is ridiculous, in my view. We recall the mandate. The jurisdiction is lost. Okay. But, Your Honor, even assuming he did not have jurisdiction — I'm not assuming. I'm telling you, in my view, he had lost it. Okay. Proceed on that basis. Okay. Proceeding on the basis that he did not have jurisdiction to revisit the frivolity question, he made an alternative ruling in which he said, even if I am incorrect in deciding this frivolity question, I never lost jurisdiction to decide pretrial motions and set calendar dates. That's the only ruling — So we're not — those things can't be touched. But his other ruling was appeal. His other ruling — His ruling made without jurisdiction that the double jeopardy was frivolous. That was appeal. That immediately — That was appeal. But he had an alternative basis. He had jurisdiction to — No. There are two rulings. One is the rule on the procedural question. The other is on the frivolity of the double jeopardy. Right. And so even if you take out the frivolity ruling — No, I don't take it out. That appeal was pending. That appeal was pending, but — So are you trying to say that as long as he proceeds on items unrelated to the double jeopardy that he retains jurisdiction for those items? Exactly. And that's exactly what we've argued in our brief, and there are many cases holding that. But he can't appeal. Since the double jeopardy goes to his — the basic question, he can't proceed with a trial while that motion is in this Court. But the — the double jeopardy issue was not back before this Court on the second appeal. This Court had already issued the mandate saying that — issued a ruling saying that the double jeopardy claim was not — not colorable. Once the second appeal was filed, that was limited to the question of whether the district court had jurisdiction to proceed to pretrial motions and set calendar dates. Well, I assume you would agree he couldn't have taken him to trial, put him to trial before the mandate issue. Absolutely, Your Honor. I disagree on the facts here. I'm sorry, Your Honor? Well, go ahead. No. We — we would concede that before this Court reissued its mandate, the district court could not have proceeded to trial in this case. But that's not what he did. He simply decided pretrial motions and set calendar dates. The divestiture rule, as this Court has held many times or stated many times, is not a hard-and-fast rule. It's a judge-made rule that should be applied with common sense. Well, you know, you say it's judge-made. It's common sense. You can't have two different courts having jurisdiction over the same issue. The same issue. Exactly, Your Honor. It's not judge-made. It's made by the nature of things. Right. The two courts cannot have simultaneous jurisdiction over the same issues, but the It addressed only pretrial motions and it set calendar dates. It noted that this case had been before it for many years, and I find it ironic that we're here on a — on a speedy trial act claim while the defendant is simultaneously arguing that the district court could not move the calendar along in this case simply because this Court had recalled its mandate. The district court was trying to move this case along. Witnesses were elderly. Evidence was becoming stale. It had to move this case along. And to say that a district court could not proceed to simply decide pretrial motions and set calendar dates on issues unrelated to those before this Court on appeal. Are we talking about a period of about six months before the mandate comes down? Between the recall of the mandate and the reissuance of the mandate. Let's see. The mandate was reissued on June 15, and it was recalled on October — in October of 2004, and reissued on June — in June of 2005. The Court did not proceed to jury impanelment or any aspects of the case that would place the defendant in justice. And the trial takes place when? September of 2005. Five. Right. Turning briefly to the Speedy Trial Act question. Let me ask you about the second appeal. What's your position on the second appeal? The second appeal from the district court's decision that it could proceed to decide pretrial motions and set calendar dates? Well, is that all that the order was? It was just — no, it was an order by Judge Alsup that he changed his ruling, and it was — and it was frivolous. The ultimate ruling by Judge Alsup that was appealed from was, I have jurisdiction to proceed to decide pretrial motions and set calendar dates. His reasoning behind that was three-pronged, really. First, he said, I can revisit the question of frivolity. We — the government's willing to throw that aside. His second reason was, I never lost jurisdiction to do that limited — to do those limited things. And his third reason was, in any event, the divestiture rule must be read with common sense and applied with common sense. So he had three reasons for his ruling, but his ultimate ruling was, I have jurisdiction simply to decide pretrial motions and set calendar dates. And that's what the appeal was from. If that's what the appeal was from, it did not divest the district court of jurisdiction because it was an — it was not a proper interlocutory appeal. It was an appeal from a non-final order that could be appealed after trial. That's the government's position. And once the mandate was reissued, then, as Judge McKeon pointed out — But let me just go back to the — an alternative would have been a mandamus at that point. That's — Under Hickey. That's probably right, Your Honor. Yes. Okay. But as you pointed out to my colleague, once the mandate reissued, that — the appeal became moot in any event. And the district court did not proceed to trial until the mandate did reissue. Turning briefly to the Speedy Trial Act question, my colleague mentioned, quote, 23 days that went missing and a clarification of the Speedy Trial Act ruling that was created out of whole cloth. Those claims completely ignore the magistrate's judge's July 18, 1997, order, which did set forth contemporaneous findings at the time the continuance was granted. Nothing was created out of whole cloth. The magistrate judge simply clarified his ruling retroactively, which this Court has held is permissible at any time before the motion to dismiss is actually decided. Could I go back to the indictment number one and then the superseding indictments? If — do you agree that you could be in a situation where, using that system, that there could be a prejudice to the defendant in terms of notice as to what kind of what's on the table? I think so. The passage of time and one indictment says one thing and one says something else. Well, I think that would occur, Your Honor, if the charges that were added to the superseding indictment, the subsequent superseding indictment, did not relate to the same core facts that were alleged, the facts that were alleged in the intervening indictments. That's where the prejudice comes from. As this and other courts have held, the question is, what does the defendant know what he has to answer to? So it's not the legal theory. It's not the statute you cite, necessarily, if the core facts are the same. Now, I'll concede that there may be cases, I don't have specific examples, where a completely different legal theory and a completely different statute that's unmoored from the central facts of the indictment, that may pose a closer question of prejudice. Here, all along, we were talking about the same misrepresentations, the same real estate schemes, the same frauds, the same offering memoranda. The only difference was in one case we had mail fraud allegations in one indictment, excuse me, and in another indictment we added securities fraud. But it was the same misrepresentations that were at issue. There is no way that's true. Kennedy. Are there no additional things that have to be proven in securities fraud rather than mail fraud? No additional facts that are needed or witnesses that might be needed? I don't think so, Your Honor. I don't know the exact elements. I don't have the exact elements of those statutes in front of me. But in terms of facts and witnesses, I do not believe in this case, at least, that anything additional was needed. And the district court specifically found and stated on the record that that very question, the answer to that very question, no additional witnesses were needed, no additional experts were needed. Mr. Hickey had all of those at his disposal. And so then, okay, that's a pretrial ruling, in effect, or it's what then happens at trial on those claims? Are there additional witnesses or additional experts or witnesses? I don't believe that Mr. Hickey offered any witnesses or experts that spoke separately to securities fraud counts. Did he argue before the district court some prejudice that he would need more time to get witnesses and identify witnesses that the judge wouldn't preclude him from I don't know exactly what argument he made to the district court when he asked when he claimed that the statute of limitations had expired. I don't believe that he claimed that that was a prejudice that he faced. I think he simply claimed that the statute of limitations had expired because the third superseding indictment was brought beyond the five-year period. I don't think he specifically claimed that prejudice. But regardless, the district court specifically found that there was no such prejudice  We are, again, talking about exactly the same facts, exactly the same misrepresentations, simply a slightly different legal theory which, most importantly and most significantly, had been in place all along from the time of the original indictment, which had never been dismissed. All right. Thank you, counsel. Thank you, Your Honors. You know, I hate to go back to Alice in Wonderland, but if you'd only ignore that new counsel that actually went to trial with that new indictment was the same that represented Hickey for seven years, I would have a very weak argument on that point, but it wasn't. And let me address this. Judge-made rule. How can you denigrate something that is of such consequence by naming it as a mere judge-made rule? So is Miranda, the prophylactic rule under Miranda. You can't just dismiss a rule on speedy trial by naming it that. The issue with that, those counts, is this. The district court himself at ER-229 made a finding that the new indictment, in his words, at most, but I challenge Judge Alsop's findings throughout this case, at most, and he said, it added a new legal theory. Well, ask any criminal defense attorney in a complex white-collar fraud case that is going to trial within six months of a seven-year case where you have rooms full of boxes of discovery and an SEC civil prosecution that also lasted many years. That is not the case. Was there an effort to continue it on that basis? Yes, there was, Your Honor, and it's all over the record. Mr. Ruscinello, I feel for the guy. He comes in, number one. He has to be appointed by the court. Here's one of the most expensive lawyers in San Francisco, but because of his duty to his client, he takes the case as an appointed case, but he objects to being said six months from the point he was on the case. Look at his sentencing memorandum, Your Honor, because everything is wrapped up right there. Right. Even after the trial. Let me just try to understand, though. Is that – I'm just trying to link it up with the appeal. So the claimed prejudice for failure to continue, is that wrapped up in your statute of limitations? Yes. Appeal specifically? Yes, it is. And let me – Okay. You may have misunderstood. I'll go back and read that. Yes. Let me also try to get rid of another Alice in Wonder. So in other words, in your view, you appeal the fact that he didn't get extra time as a result of the addition of the new theory? That he was forced to trial within six months. No, we have not raised that issue. Okay. Mr. Cortez, could you clear – what was appealed when Judge Ossoff's order was appealed, the second appeal of the circuit? That he had jurisdiction over as he put it. That was the question. Yes. That he had – number one, it was a dual ruling. Number one, he made again a ruling on the double jeopardy issue and the frivolity of that. The problem with that procedurally, Your Honors, is that Judge Chesney from the same court at the same level – All right. All right. All right. On the first part, you say he appealed the fact that Judge Ossoff said he had jurisdiction. Correct. Now, we're only talking about jurisdiction over pretrial matters for that part. Well, see, that's where I quarrel only talking. I want to get rid of this Alice in Wonderland argument because – No, no. But because the mandate had issued it. No, it hadn't. No, it hadn't. This very court withheld it. And then there was a notice of appeal, which is still pending before you, Your Honor. That's what we have two different cases. We're talking about the second notice of appeal, I thought. Yes. The mandate had not issued at the time he ruled. No. No, no. But the mandate had issued before he did anything other than pretrial matters. Well, see there, in rem matter of Thorpe, the answer to that is yes. Well, the answer – No way. Yes, absolutely. But let me bring you back – Let me make sure we have the chronology straight. He goes to trial several months after the mandate issues. Correct. But let me bring you back, if I may, as to what he has jurisdiction to do in the first place, interlocutory appeal or no interlocutory appeal. In rem matter of Thorpe, it's settled law. His very court adopted it. And that case says that when a notice of appeal is filed, the district court has jurisdiction only – only to do the following three things. So I don't want to, you know, pretend that the judge could rule on pretrial motions, one, in aid of appeal, two, correct clerical mistakes, or three, aid in the execution of judgment. That's it. The judge can't have a hearing on pretrial motions and what evidence is going to come in. He can't do that. And he certainly cannot rule on the double jeopardy issue because it's before this Court. So I'm not going to concede here, because it's being finessed that some judge may rule that a district court may have jurisdiction to do other things while only part of the issue is before this Court. Absolutely not. Until this Court changes the law, a district court has jurisdiction while an appeal is pending here. To do only three things. And that's the law of the land. Incidentally, I just had the same issue with Judge Moskowitz in the Southern District. There was a government-filed interlocutory appeal on a co-defendant. Judge Moskowitz observed that maybe he lost jurisdiction for all purposes, and we're right now trying to figure out what to do with the co-defendant. That's what a judge is supposed to do. So, Your Honors, the final point I'll make is this. The new counts that were added, is that just the same thing that was alleged all along? And so Mr. Hickey had notice of what he was supposed to do, withdraw and defend and prepare adequately? Absolutely not. Because the new counts, which were abandoned, did add a completely different theory of liability on the securities counts. You know why they did it? I'll tell you why they did it. Mamie Tang, the co-defendant, had pleaded guilty. The government expected her to cooperate. That's why they amended. And you know what she did when she was asked to cooperate? Well, you know. She didn't. That new theory of liability was going to be proved by Mamie Tang to add new facts that Ruth Zanello did not have access to. Thank you for your time. Thank you both very much. It's a difficult case. I apologize for the brief and all the myths we had in the brief. Have fun. I think that's how it was delivered to us here. Thank you very much, both of you. The case will be submitted and the court will stand in recess for the day.
judges: Reinhardt, Noonan, McKeown